UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

|  |  |
|---|---|
| AMERISURE INSURANCE COMPANY, | CASE NO.: |
| Plaintiff, | **COMPLAINT** |
| vs. |  |
| NORTHERN CONCRETE CONSTRUCTION, INC., and LONG PRAIRIE PACKING COMPANY, LLC |  |
| Defendants, |  |

**AMERISURE INSURANCE COMPANY'S COMPLAINT FOR DECLARATORY JUDGMENT**

Now comes Plaintiff, AMERISURE INSURANCE COMPANY (herein "Amerisure"), and hereby sets forth its Complaint for Declaratory Judgment against Defendants, NORTHERN CONCRETE CONSTRUCTION, INC. ("Northern") and LONG PRAIRIE PACKING COMPANY, LLC ("Long Prairie") (herein collectively "Defendants"). In support thereof Amerisure alleges as follows:

I.  **NATURE OF ACTION AND RELIEF SOUGHT**

1. This action seeks declaratory relief pursuant to 28 U.S.C. § 2201 and 2202.

2. This is a civil action brought by Amerisure seeking a declaration that it owes no duty to defend and indemnify the Defendants under a Commercial General Liability (herein "CGL") insurance policy issued by Amerisure to Northern in connection with the underlying arbitration captioned *Long Prairie Packing Company, LLC v. Northern Concrete Construction,*

1

*Inc.*, Case No.: 65 110 Y 00223 13, filed with the American Arbitration Association (herein "Arbitration").

3. There is an actual, present and *bona fide* controversy between the parties with respect to whether Amerisure is required to defend and indemnify Northern in connection with the Arbitration. Northern seeks defense and, on information and belief, indemnification in connection with the Arbitration under a CGL policy issued by Amerisure to Northern. *See infra* Section B, pg. 6. Amerisure denies both defense and indemnity to Northern for the Arbitration.

4. With respect to the Defendants, Amerisure's rights and duties pursuant to the Amerisure policy are dependent upon this Court's interpretation of the policy's terms, conditions, limitations, provisions, exclusions and/or endorsements.

5. Amerisure requests that this Court declare the rights and obligations of the parties under these insurance contracts pursuant to 28 U.S.C. § 2201, et seq., finding and declaring that Amerisure owes no coverage obligations to Northern for the claims asserted in the Arbitration.

## II. PARTIES

6. At the time of the commencement of this action, Plaintiff Amerisure was an insurance company organized and existing under the laws of the State of Michigan. At the time of filing this action, Amerisure's principal place of business was Farmington Hills, Michigan.

7. At the time of the commencement of this action, upon information and belief, Defendant Northern is a Wisconsin corporation whose principal place of business is located in Denmark, Wisconsin. On information and belief, Northern, was, and is, doing business in Wisconsin including this district.

8. At the time of the commencement of this action, upon information and belief,

Defendant Long Prairie is a limited liability corporation, organized in the State of Delaware, whose principle place of business is located in Long Prairie, Minnesota. On information and belief Long Prairie, was, and is, doing business in Wisconsin including this district. No specific relief is requested against Long Prairie, who has been joined because they are the plaintiffs in the Arbitration, and thus required parties to this action. Should Long Prairie stipulate to be bound by the declaration of rights and judgment herein, Amerisure will dismiss them from this matter.

### III. JURIDICTION AND VENUE

9. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between the parties, and because the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (a) and (c).

11. Long Prairie is named as a defendant herein because it is the plaintiff in the Arbitration pending against Northern and is, therefore, a required party to this declaratory judgment action.

12. Pursuant to 22 U.S.C. § 2201, this Court has the power to make binding declarations of the rights and obligations of the parties herein, and to adjudicate the dispute between the parties herein.

### IV. BACKGROUND

#### A. The Arbitration

13. On November 27, 2013, Long Prairie filed the Arbitration (*Long Prairie Packing Company, LLC v. Northern Concrete Construction, Inc.*, Case No.: 65 110 Y 00223 13, filed with the American Arbitration Association), against Northern, seeking amounts related to

Northern's allegedly defective concrete work in connection with the construction of an anaerobic digester system at Long Prairie's meat processing facility. *See* **Exhibit A, Demand for Arbitration**.

14. On December 7, 2011, Long Prairie and Northern entered into a subcontract, wherein Northern was to provide concrete construction services for the construction of the anaerobic digester. **Exhibit A**.

15. Long Prairie alleges that the anaerobic digester system consists of seven rectangular concrete holding tanks. **Exhibit A, ¶7.**

16. The tanks are intended to hold liquefied paunch, a waste product from Long Prairie's meat processing facility, process the waste, and, ultimately, create a bi-product of methane gas, which will be sold to a public utility. **Exhibit A, ¶7.**

17. Long Prairie contends that on or about January 6, 2013, after completion of Northern's concrete work, one of the tanks was filled with water to determine its water tightness. Upon filling, the tank leaked immediately. **Exhibit A, ¶8.**

18. Long Prairie claims that during the process of testing the tanks, it was discovered that the concrete had "serious honeycombing, lift lines and other defects [that] were allowing excessive water leakage." **Exhibit A, ¶8.**

19. Long Prairie asserts that it made a demand on Northern to repair the defective concrete work, but Northern did not do so. **Exhibit A, ¶10.**

20. As a result, Long Prairie has arranged for the concrete's remediation, and claims that the remediation consists of "repair of the lift lines, honeycombing and other defects", "application of a layer of shotcrete over the entire surface of the walls to provide a substrate for a liner", "application of an elastomeric liner", engineering and inspection services, "removal and

4

replacement of all processing piping and equipment in the tanks, and dewatering to enable the construction." **Exhibit A, ¶12.**

21. As a result of the defective concrete work, Long Prairie seeks as damages costs associate with:

> testing and evaluation of the concrete failures; removal of the insulated forms; temporary labor for cleanup; removal and replacement of controls; removal and replacement of piping and processing equipment; engineering for evaluation and remediation; pre-bid and bid administration; permits; mobilization; dewatering; general conditions; concrete repair; shotcrete; lining; demobilization; testing; inspection; construction administration; startup; legal fees; waste removal; lost revenue; and professional and clerical staff time.

**Exhibit A, ¶14.**

22. As a result of Northern's allegedly faulty workmanship (*i.e.* concrete construction), Long Prairie seeks damages in excess of $4,529,000 plus lost revenue, costs, disbursements, and attorney fees. **Exhibit A, ¶14.**

23. On or about December 16, 2013, Northern tendered the Arbitration to Amerisure for defense and indemnity.

24. On February 21, 2014, Amerisure, in conjunction with its ongoing investigation, agreed to undertake the defense of Northern subject to a complete reservation of rights. Specifically, Amerisure reserved its right to deny coverage and withdraw from the defense. *See* **Exhibit B, Amerisure's February 21, 2014 Correspondence.**

25. On December 18, 2014, after completing its investigation, Amerisure issued a revised reservation of rights letter to Northern wherein it informed Northern that the allegations of, and relief sought in, the Arbitration did not allege "property damage" caused by an "occurrence", or were otherwise excluded under the Amerisure Policy. Amerisure, however,

informed Northern that it would continue to provide Northern with a defense for the Arbitration, under a full and complete reservation of rights, pending a judicial determination of Amerisure's coverage obligations under the Amerisure Policy. *See* **Exhibit C, Amerisure's December 18, 2014 Correspondence**.

### B. The Amerisure Policy

26. Amerisure issued a CGL policy to Northern, bearing policy number CPP 2078843, and which was effective from September 15, 2012 to September 15, 2013 (herein "Amerisure Policy"). *See* **Exhibit D.**

27. The CGL Coverage Part of the Amerisure Policy states in relevant part:

**SECTION I - COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

6

No other obligation of liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A or B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; . . .

\* \* \*

2. **Exclusions**

This insurance does not apply to:
\* \* \*

k. **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

l. **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

7

  (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

  This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

28.  The Amerisure Policy also contains the following Definitions:

  **SECTION V – DEFINITIONS**

    \*  \*  \*

8.  "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

  a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

  b. You have failed to fulfill the terms of a contract or agreement;

  If such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

    \*  \*  \*

13.  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

    \*  \*  \*

16.  "Products-completed operations hazard":

  a.  Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    (1)  Products that are still in your physical possession; or

    (2)  Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

8

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

9

> For the purposes of this insurance, electronic data is not tangible property.
>
> As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.
>
> * * *
>
> 21. "Your product":
>
>     a. Means:
>
>         (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
>
>             (a) You;
>
>             (b) Others trading under your name; or
>
>             (c) A person or organization whose business or assets you have acquired; and
>
>         (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.
>
>     b. Includes
>
>         (1) Warranties or representations made at any time with respect of the fitness, quality, durability, performance or use of "your product"; and
>
>         (2) The providing of or failure to provide warnings or instructions.
>
>     c. Does not include vending machines or other property rented to or located for the use of others but not sold.
>
> 22. "Your work":
>
>     a. Means:

10

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

(2) The providing of or failure to provide warnings or instructions.

\* \* \*

## COUNT I
## DECLARATORY JUDGMENT
## (NO "OCCURRENCE" ALLEGED)

29. Amerisure incorporates the allegations set forth within Paragraphs 1 through 28 as if fully set forth herein.

30. Pursuant to the Amerisure Policy, Amerisure "will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. . . . This insurance applies to "bodily injury" and "property damage" only if: (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"." **Exhibit D.**

31. The Amerisure Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id*.

32. Allegations of faulty workmanship itself, and the repair and/or replacement of same, do not constitute an "occurrence", as required by a CGL policy.

11

33. The allegations in the Arbitration fail to allege an "occurrence" as defined by the Amerisure Policy.

34. Instead, the Arbitration asserts allegations against Northern solely for its allegedly defective concrete work, and seeks amounts associated solely with the allegedly defective concrete work and repair and replacement thereof. *See* **Exhibit A.**

35. Absent an "occurrence", Amerisure owes no defense or indemnity obligation to Northern in connection with the Arbitration.

**WHEREFORE**, Amerisure Insurance Company respectfully requests entry of a declaratory judgment in its favor and against Defendants, finding and declaring that Amerisure has no defense or indemnity obligation to Defendants in connection with the Arbitration because the Arbitration fails to allege an "occurrence" as defined under the Amerisure Policy, together with costs and any other further relief this court deems just and proper.

### COUNT II
### DECLARATORY JUDGMENT
### (NO "PROPERTY DAMAGE" CAUSED BY AN "OCCURRENCE")

36. Amerisure incorporates the allegations set forth within Paragraphs 1 through 28 as if fully set forth herein.

37. Pursuant to the Amerisure Policy, Amerisure "will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. . . . This insurance applies to "bodily injury" and "property damage" only if: (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"." **Exhibit D.**

38. The Amerisure Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id*.

12

39. The Amerisure Policy defines "property damage" as "physical injury to tangible property, including all resulting loss of use of that property" or "loss of use of tangible property that is not physically injured". *Id*.

40. Allegations of faulty workmanship itself, and the repair and/or replacement of same, do not constitute an "occurrence", as required by a CGL policy.

41. Absent an allegation that any alleged faulty/defective work caused damage to any other property, there is neither an "occurrence" nor "property damage" under a standard form CGL policy.

42. The allegations in the Arbitration fail to allege any "property damage" caused by an "occurrence" as these terms are defined by the Amerisure Policy.

43. Instead, the Arbitration asserts allegations against Northern solely for its allegedly defective concrete work, and seeks amounts associated solely with the allegedly defective concrete work and repair and replacement thereof. *See* **Exhibit A.**

44. Absent a claim for "property damage" caused by an "occurrence", Amerisure owes no defense or indemnity obligation to Northern in connection with the Arbitration.

**WHEREFORE**, Amerisure Insurance Company respectfully requests entry of a declaratory judgment in its favor and against Defendants, finding and declaring that Amerisure has no defense or indemnity obligation to Defendants in connection with the Arbitration because the Arbitration fails to allege "property damage" caused by an "occurrence" as defined under the Amerisure Policy, together with costs and any other further relief this court deems just and proper.

# COUNT III
# ALTERNATIVELY, DECLARATORY JUDGMENT
# ("Damage To Your Work" Exclusion Bars Coverage)

45. Amerisure incorporates the allegations set forth within Paragraphs 1 through 28 as if fully set forth herein.

46. The Amerisure Policy provides that "This insurance does not apply to . . . "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard". This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." **Exhibit D.**

47. The Amerisure Policy defines "property damage" as "physical injury to tangible property, including all resulting loss of use of that property" or "loss of use of tangible property that is not physically injured". *Id*.

48. "Your work" is defined in the Amerisure Policy as: "(1) Work or operations performed by you or on your behalf; and (2) Materials, parts or equipment furnished in connection with such work or operations[, which] [i]ncludes (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and (2) The providing of or failure to provide warnings or instructions." *Id*.

49. Northern entered into a subcontract with Long Prairie to provide concrete construction work associated with the construction of the anaerobic digester system. ***See*** **Exhibit A.**

50. Northern performed the work under the subcontract, and did not employ any subcontractor to do so.

51. In the alternative, and without prejudice to the allegations set forth in Counts I

14

and/or II, if any "property damage" caused by an "occurrence" is deemed to have occurred with the concrete construction work, it was confined to Northern's work and associated with the repair and/or replacement thereof.

52. Damages associated with the cost of repairing property that was damaged in the course of repairing and/or replacing Northern's allegedly faulty/defective work is precluded from coverage under the Damage to Your Work Exclusion.

53. In the alternative, and without prejudice to the allegations set forth in Counts I and/or II, the Arbitration's claim for damages as a result of the repair and/or replacement of Northern's allegedly defective concrete work is barred from coverage under the Damage to Your Work Exclusion.

54. Thus, in the alternative, and by operation of the Damage to Your Work Exclusion, Amerisure owes Defendants no duties or obligations under the Amerisure Policy.

**WHEREFORE**, Amerisure Insurance Company alternatively requests entry of a declaratory judgment in its favor and against Defendants finding and declaring that Amerisure has no defense or indemnity obligation to Defendants in connection with the Arbitration by operation of the Damage to Your Work Exclusion, together with costs any other further relief this court deems just and proper.

## COUNT IV
## ALTERNATIVELY, DECLARATORY JUDGMENT
### ("Damage To Your Product" Exclusion Bars Coverage)

55. Amerisure incorporates the allegations set forth within Paragraphs 1 through 28 as if fully set forth herein.

56. The Amerisure Policy provides that "This insurance does not apply to . . . "property damage" to "your product" arising out of it or any part of it." **Exhibit D.**

15

57. The Amerisure Policy defines "property damage" as "physical injury to tangible property, including all resulting loss of use of that property" or "loss of use of tangible property that is not physically injured". *Id*.

58. "Your product" is defined in the Amerisure Policy as "a. (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by: (a) You; (b) Others trading under your name; or (c) A person or organization whose business or assets you have acquired; and (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products. b. Includes (1) Warranties or representations made at any time with respect of the fitness, quality, durability, performance or use of "your product"; and (2) The providing of or failure to provide warnings or instructions. c.

Does not include vending machines or other property rented to or located for the use of others but not sold." *Id*.

59. Northern entered into a subcontract with Long Prairie to provide concrete construction work associated with the construction of the anaerobic digester system. **See Exhibit A.**

60. Northern performed the work under the subcontract.

61. In the alternative, and without prejudice to the allegations set forth in Counts I and/or II, if any "property damage" caused by an "occurrence" is deemed to have occurred with the concrete construction work, it was confined to Northern's work or product and associated with the repair and/or replacement thereof.

62. Damages associated with the cost of repairing property that was damaged in the course of repairing and/or replacing Northern's allegedly faulty/defective work or product is precluded from coverage under the Damage to Your Product Exclusion.

16

63. In the alternative, and without prejudice to the allegations set forth in Counts I and/or II, the Arbitration's claim for damages as a result of the repair and/or replacement of Northern's allegedly faulty/defective concrete work or product is barred from coverage under the Damage to Your Product Exclusion.

64. Thus, in the alternative, and by operation of the Damage to Your Product Exclusion, Amerisure owes Defendants no duties or obligations under the Amerisure Policy.

**WHEREFORE**, Amerisure Insurance Company alternatively requests entry of a declaratory judgment in its favor and against Defendants finding and declaring that Amerisure has no defense or indemnity obligations to Defendants in connection with the Arbitration by operation of the Damage to Your Product Exclusion, together with costs any other further relief this court deems just and proper.

## COUNT V
## ALTERNATIVELY, DECLARATORY JUDGMENT
**(Damage to Impaired Property Or Property Not Physically Injured Exclusion Bars Coverage For Loss of Use Claim)**

65. Amerisure incorporates the allegations set forth within Paragraphs 1 through 28 as if fully set forth herein.

66. The Amerisure Policy provides that "This insurance does not apply to . . . "Property damage" to "impaired property" or property that has not been physically injured, arising out of: [a] defect, deficiency, inadequacy or dangerous condition in "your product" or "your work". . . ." **Exhibit D.**

67. The Amerisure Policy defines "property damage" as "physical injury to tangible property, including all resulting loss of use of that property" or "loss of use of tangible property that is not physically injured". *Id*.

17

Case 2:14-cv-01585-JPS   Filed 12/22/14   Page 17 of 19   Document 1

68. "Impaired property" is defined in the Amerisure Policy as "tangible property, other than [the insured's product or work], that cannot be used or is less useful because: [i]t incorporates [the insured's product or work] . . . if such property can be restored to use by the repair, replacement, adjustment or removal of [the insured's product or work] . . .". *Id*.

69. The Arbitration seeks damages for lost revenue as a result of the delay in utilizing the anaerobic digester system due to Northern's faulty/defective concrete work. **Exhibit A.**

70. In the alternative, and without prejudice to the allegations set forth in Counts I and/or II, if any "property damage" to "impaired property" caused by an "occurrence" is deemed to have occurred, it was as a result of the incorporation of Northern's concrete work into the anaerobic digester system, and such system will be "restored to use" by the removal and replacement of Northern's concrete work. *See* **Exhibit D.**

71. Thus, in the alternative, and by operation of the Damage to Impaired Property Or Property Not Physically Injured Exclusion, coverage is barred for damages sought for any alleged lost revenue and/or loss of use.

**WHEREFORE**, Amerisure Insurance Company alternatively requests entry of a declaratory judgment in its favor and against Defendants finding and declaring that Amerisure has no defense or indemnity obligations to Defendants for any damages sought for lost revenue by operation of the Damage to Impaired Property Or Property Not Physically Injured Exclusion, together with costs any other further relief this court deems just and proper.

Dated: this 22nd day of December, 2014

Respectfully submitted:

/s/ Donald E. Elder_____
*Attorney for Plaintiff,*
*Amerisure Insurance Company*

Donald E. Elder
Emerson & Elder, P.C.
53 West Jackson Blvd.
The Monadnock Building
Suite 526
Chicago, Illinois 60604
Direct Dial: (312) 520-2502
Email: dee@emersonelder.com